## GEORGIA CASUALTY COMPANY *et al. v.* MARTIN.

This case arose under the workmen's compensation law of Georgia. The defendant in error filed a claim with the Industrial Commission of Georgia, asserting a right to recover compensation on account of the death of her husband while working as a convict guard in the employment of Laurens County. The case was originally heard before one of the commissioners, who rendered a decision denying the right of the applicant to recover. By appeal she carried the case before the entire commission, which sustained the finding rendered; and then an appeal was taken to the superior court, and the decision of the commission was affirmed. To the judgment of the superior court a writ of error was sued out to the Court of Appeals of Georgia; and the latter court rendered a judgment reversing the judgment of the superior court, and in effect held that Mrs. Martin, as a matter of law, should recover. The plaintiff in error filed an application to the Supreme Court for a writ of certiorari, which was granted. *Held,* that the finding and holding of the commissioner before whom the application was first heard was supported by the evidence in the case; and the finding of the commission upon the issues of fact is conclusive as to those issues in the reviewing court, there being evidence to sustain it. From those findings, which are controlling in the case, it followed that the accident which resulted in the death of the husband of the applicant did not arise out of his employment, and that the claimant was not entitled to recover compensation under the provisions of the workmen's compensation act.

No. 4002. APRIL 17, 1924. REHEARING DENIED MAY 15, 1924.

Certiorari; from Court of Appeals. 30 *Ga. App.* 712.

*Brock, Sparks & Russell* and *J. E. Burch,* for plaintiffs in error.

*Roger D. Flynt,* contra.

Beck, P. J.   G. L. Martin, the husband of the applicant, was employed as a convict guard of Laurens County, and on March 13, 1922, he lost his life as a result of an accidental discharge of a pistol while he was at the convict camp, the place where he was required to perform his duty as a guard at that time.   The County of Laurens carried a policy of workmen's compensation insurance in the Georgia Casualty Company.   It was admitted that this employee was covered by the policy, and the sole question in the case in all the proceedings previously had therein is whether or not the death of the employee arose out of his employment; that is, did his death result from a risk that naturally and actually attached to the particular employment in which he was engaged, or did it result from an exposure extraneous to his employment, and one attaching to him as a member of society and at all times, without reference to the particular employment in which he was engaged at the time of his death?   The evidence in the case is not contradictory, and leaves the whole question one of law.   Dewey Bedingfield and others had come into the camp with the convicts and had grouped themselves about a bench, and some of them were sitting down.   The deceased stepped behind Bedingfield, pulled the latter's pistol out of his hip-pocket, and began trying to snap it.   He then engaged in some jocular remarks with Bedingfield about the fact that his pistol would not work.   After handling the pistol more or less and unbreaching the same and laughing and joking about its condition, Martin delivered the pistol to Bedingfield.   Bedingfield then undertook to breach the pistol and replace it in his pocket, and in doing so it was accidentally fired and killed Martin.   The only two witnesses offered in the case answered, on cross-examination, that no one was attempting to repair the pistol or otherwise place it in good condition, but that Bedingfield was merely trying to put it back in shape so he could get it in his pocket, Martin having in fun taken it out of his pocket and played with it and unbreached it, making it necessary for Bedingfield to breach it in order to get it back in his pocket.

The member of the commission, the Honorable S. J. Slate, who heard the case, concluded that it was a case of an accident growing out of fun-making or "horse-play" on the part of the deceased.   In an opinion citing and quoting from many authorities, the commissioner denied the claimant any compensation in the

case, on the ground that the death of Martin arose out of a risk not imposed by the nature of his employment, but a risk created by his own curiosity and inclination to play. The claimant appealed the case to the commission as a whole; and after full argument before that body, her claim was again denied. Thereafter she filed an appeal to the superior court of Laurens county; and after a full hearing the judge of that court refused to reverse the finding of commission. Thereupon the case was taken to the Court of Appeals of Georgia, and the rulings hereinbefore recited were all overruled. The opinion of the Court of Appeals is in part as follows: "The act of the deceased in stepping beyond the duties of his employment and in a friendly and playful manner taking from the coemployee the pistol and tampering with it in such a manner that the coemployee, after retaking it, found it necessary to manipulate it for the purpose of adjusting it and causing it to work properly, while voluntary upon the part of the deceased, was not the cause of the accidental discharge of the pistol in the hands of the other employee while readjusting it, and therefore was not the cause of the injury to the employee shot and killed by such discharge. While the act of the deceased in tampering with the pistol may have rendered necessary its readjustment by the other employee, it did not render its discharge necessary; and such act, therefore, cannot in any sense be the cause of its discharge or of the consequent injury. Compensation arising out of the death of the deceased therefore is not barred under section 14 of the act, supra; and it was therefore error for the superior court to affirm the award of the industrial commission denying compensation to the beneficiaries entitled thereto under the act."

The commissioner before whom the cause was heard in the first instance, as we have seen, found against the applicant. In an opinion fully covering the issues he stated the substance of the evidence and his reasons for the conclusion reached. In part, his statement of the evidence, which includes also certain deductions therefrom which he was authorized to make, is as follows: "Mr. Perry, an eye-witness, testified that Mr. Martin came in first from duty as a convict guard, and that he took a seat near by. A little later Mr. Bedingfield came in with a bunch of convicts, and these convicts all went to their places, and Mr. Bedingfield came and sat down on the same bench with Mr. Martin. Mr. Martin got up,

or right at that time Mr. Bedingfield was standing up, and Mr. Martin walked around and took Mr. Bedingfield's pistol out of his pocket, and was examining it; he unbreached it, and when Mr. Martin went to put it back it wouldn't revolve, and Mr. Bedingfield took it and went to breach it back, and it fired, striking Mr. Martin, causing his death. Mr. Perry stated that they were still on duty because they had not been relieved by the night-guard. He also stated that there was no occasion or any reason why Mr. Martin should have taken the revolver out of Mr. Bedingfield's pocket; that Martin was not employed to repair pistols, and that he just walked up and took the pistol for some unknown reason and unbreached it and played with it. If there was any conversation between Mr. Martin and Mr. Bedingfield, Mr. Perry testified that he did not hear it. He testified that the revolver was not taken in any spirit of anger from the pocket of Bedingfield. Mr. Bedingfield testified that when he came on the yards with his convicts, Mr. Martin was sitting on a bench, and that he walked up and put his elbow on the bench like this (indicating), and was watching a game of checks, and that Mr. Martin got up and walked behind him and got his gun and went to snapping it. Bedingfield told him to look out, the thing will shoot, and Martin said, 'No, I don't think so.' Bedingfield testified that he said, 'Give it to me.' There was one bullet in it, and Martin said, 'Look here, just one bullet with a bunch of men,' and when he gave this back to me I thought Mr. Martin had got the bullet out. I clicked the cylinders like this (indicating), and I had the gun like this (indicating positions), and Mr. Martin must have walked around in front of me like this. I turned the pistol down like this, and when I did it discharged.' Bedingfield further testified that there was no reason for him to take the pistol out. The pistol was in Bedingfield's hip-pocket; that Martin did not ask him to let him take it out, and that he did not know that he was going to take it out, and that he didn't know what he was going to do with it. It was testified that both men were of equal rank, and that Bedingfield was the general superintendent of the county; that no rules and regulations had been given in reference to pistols. . .

"Viewing the evidence in that light, the commissioner can only find that Mr. Martin, in a spirit of curiosity or in a spirit of levity, commonly called 'horse-play' took the pistol from

Bedingfield's pocket, snapped it, joked about it; and that Mr. Martin himself, by his action, produced the risk from which his accidental death occurred. . . The commissioner, in viewing this evidence, can find no reason why the employment of Mr. Martin should cause him to secure the pistol of Mr. Bedingfield. The commissioner cannot conceive that the act of a convict guard playing with a pistol of another guard is a risk that is reasonably incident to the business of guarding convicts. Mr. Martin was the instigator. Mr. Martin himself put into activity the risk which resulted in the loss of his life. The risk which Mr. Martin put into activity was not a risk which was incidental to his employment, or a risk which a man in entering the employment of the county as a convict-guard might expect. The commissioner finds that the accident arose in the course of employment, but that the employment itself did not contribute to the accident, and that the death of Mr. Martin was brought on by a risk which was put into action by the conduct of Mr. Martin himself, and that there was no reason for this action on his part based upon the risk of his employment. Some question has been raised about repairing the pistol. There is no evidence before the commissioner that Mr. Martin was employed to repair pistols for the county. The only evidence before the commissioner is that each convict guard is required to keep his own pistol in repair. If Mr. Martin had been injured while attempting to repair his own pistol, the situation might have been different. There was nothing in the line of his employment that required him to repair or look after the condition of Mr. Bedingfield's pistol. Mr. Martin took this pistol without the consent of Mr. Bedingfield, without any suggestion on the part of Bedingfield that he should take it, and took it in a spirit of curiosity or as a joke; and it is one of those unfortunate accidents brought about by the conduct of the employee stepping outside the scope of his employment, and for which no compensation can be allowed."

An examination of the evidence in the record, as given by the witnesses themselves, shows that the commissioner has restated, in his finding and in the clear opinion which he rendered, the substance of the material evidence in the case. And after an examination of that evidence, as well as the restatement of it by the commissioner, with certain deductions which he made, we reach the conclusion that his finding, his deductions and his conclusion

adverse to the claimant were authorized by the evidence. We do not think that the real merits of this case turn upon the decision of the abstract question as to whether it was the act of Martin or the act of Bedingfield that constituted the proximate cause of the accident that resulted in the death of the former. There is broad and able argument in the briefs of counsel for both the claimant and the plaintiffs in certiorari upon the subject of proximate cause, and numerous cases are cited to illustrate the subject under discussion. In a narrow sense of the expression, it may be true that Bedingfield's act in breaching the pistol which had been unbreached by Martin caused the discharge of the weapon, and that this was the proximate cause of the injury. But it is clear that the commissioner who passed upon the case in the first instance was authorized to find that Martin himself brought about, without any occasion for his doing so, a series of circumstances that led to the final act which, as we have said, might be the immediate, proximate cause of the fatal accident. But when we reach the last of these circumstances in the chain of circumstances that led to the fatal conclusion, we must, in order to properly determine its importance relatively to the final effect, look to the first one of the series of acts that resulted so disastrously. While the breaching of the pistol actually caused it to fire, and was therefore the immediate cause of the accident, still, Mr. Martin's own conduct and acts upon his part preceding this breaching of the pistol caused the results that actually flowed from the breaching of the pistol,—that is the restoring it to the condition in which it was when Martin took it from Bedingfield's pocket. We do not care to undertake to discuss the applicability or non-applicability of the famous squib case to the series of acts which, in the present case, resulted in the death of the husband of the applicant. Martin in sport, or in "horse-play," in the language of the commissioner, without proper occasion therefor, not in the discharge of any duty relatively to the pistol (although it was a weapon which Bedingfield properly had in his possession as one of the guards or employees about the convict camp), took the pistol which Bedingfield had, not for the purpose of repairing it, from the pocket of Bedingfield, and, in the language of the witness Bedingfield, "went to snapping it. I said, 'Look out, that thing will shoot.' He said, 'No, I don't think so.' I said, 'Give it to me.' There was one bullet in it, and he said, 'Look here,

just one bullet with a bunch of men.'" And the witness also stated, in answer to a question, that he, Martin, was joking about guarding the convicts with only one bullet, and added, "He gave it [the pistol] back to me. I thought he had got it out. I clicked the cylinders like this [indicating], and he was standing here [indicating], and I had the gun like this [indicating]. Mr. Martin must have walked around in front of me like this. I turned the pistol down like this; and when I did, it discharged." He also testified that Martin unbreached the pistol.

The workmen's compensation act in part is intended "to establish rates of compensation for personal injuries or death sustained by employees in the course of employment." In subsection (d) of subsection (8) of section 2 of the act, "'Injury' and 'personal injury' shall mean only injury by accident arising out of and in course of the employment." Conceding that the accident in question here arose in the course of the employment, as the commissioner found, did it arise "out of" the employment. The commissioner found that it did not. This finding ·was sustained, on appeal, by the full commission, and then sustained in the superior court by a judgment rendered upon appeal to that tribunal. The finding upon the issues of fact by the commission is conclusive as to those issues in the reviewing court, if there is any evidence to sustain it. And we are of the opinion that the commissioner hearing the case was fully authorized, under the facts submitted for his consideration at the hearing, to hold that the accident which resulted in the death of Martin did not arise out of his employment, and that the claimant was not entitled to recover compensation under the provisions of the workmen's compensation act. See, in this connection, *Southern Railway Co.* v. *Webb,* 116 *Ga.* 152 (42 S. E. 395, 59 L. R. A. 109) ; Pierce v. Lumber Co., 99 Neb. 321 (156 N. W. 509) ; Federal Rubber Mfg. Co. v. Havolic, 162 Wis. 341 (156 N. W. 143) ; Hulley v. Moosbrugger, 88 N. J. L. 161 (95 Atl. 1007, L. R. A. 1916C, 1203). These cases are cited in the opinion of the commissioner, and are cited here; and we deem it unnecessary to state the rulings literally or in substance, as they may be read by those interested in the questions there discussed. See also 1 Schneider's Workmen's Compensation Law, 502 et seq.; Empire Health &c. Co. v. Purcell (Ind. App.), 132 N. E. 664; 1 Shearman & Redfield on Negligence, 54 et seq.

*Judgment reversed. All the Justices concur.*