29901. YOUNG *v.* LIBERTY MUTUAL INSURANCE CO. *et al.*

DECIDED FEBRUARY 20, 1943. REHEARING DENIED MARCH 11, 1943.

*Howell Brooke,* for plaintiff.

*Neely, Marshall & Greene,* for defendants.

FELTON, J. Harley H. Young filed a claim for compensation with the Industrial Board for injuries alleged to have been sustained by him while working for the Georgia Marble Company. On appeal to the full board the director's denial of compensation was affirmed. The superior court affirmed the award and the claimant excepted.

The facts are undisputed. The claimant was a member of a section gang employed by the Georgia Marble Company to keep in repair a private railroad right of way owned by the company. While they were engaged in their work it began to rain and the men went into a small tool shack where materials and tools, used

for quarry purposes by the company, were stored. While they were in the shack Howard Cantrell picked up a can containing powder and poured some of it into his hand. Olen Fountain asked him for some of it. Cantrell gave Fountain some of the powder and placed what he had left on the bench on which they had been sitting. Howard Ray lighted a cigarette and tossed a match at the pile of powder on the bench. The match fell short of the powder and went out. Charles Crow then got up and walked over in front of Ray and Cantrell and struck a match and threw it on the powder, as a result of which there was an explosion and the claimant and four other members of the group received painful burns. The men were accustomed to go to the nearest shelter or building of their employer when it was raining. The tool house into which they went was nearest to where they were working when the rain started. Claimant and other employees had used this house on other occasions to seek shelter from the rain, and had been directed so to do by their foreman. The tool house was used for the purpose of storing tools, powder and other materials. The powder was used for blasting stone in the quarry and was not under lock and key, but on the day of claimant's injury was in a large can on the work bench. There was no lid on the can. The claimant was being paid for the time he was in the tool house.

The principle upon which an adjudication of this case rests seems to have been decided contrary to the contentions of the claimant. Under the rulings in *United States Fidelity & Guaranty Co.* v. *Green,* 38 *Ga. App.* 50 (142 S. E. 464), and *Maddox* v. *Travelers Insurance Co.,* 39 *Ga. App.* 690 (148 S. E. 307), it is clear that the injury in the instant case can not be said to have arisen "out of the employment" of the claimant, conceding that it arose in the course of the employment. While the act of the fellow servant in the *Green* case, supra, may not have been "horse play," it was carelessness which did not arise out of the servant's duties. The principle of the *Green* case is the same as that of this case, which is that such an occurrence might not have been reasonably anticipated by the employer as a risk naturally incident to the nature of the employment, and after the event, not to have had its origin in a risk connected with the business of the employment and to have arisen out of and flowed from that source as a natural

consequence. Claimant cites a number of cases from other jurisdictions to the effect that injuries resulting from the "horse play" of fellow servants in which the injured employee takes no part are compensable. Our own decisions, however, follow the contrary authorities from other jurisdictions, which are numerous. As we have stated, the ruling in the *Green* case is controlling in principle, and in the *Maddox* case the decision denying compensation was not based on the fact that the injured employee instigated or took part in the "horse play," but on the theory that the injury did not arise out of a risk connected with the business of the employer. The claimant contends that the storage of the powder subjected the claimant to a risk not common to the public. That is true, and if the injury had occurred from a risk contemplated by the employer it would have been compensable. The distinction here is that a risk from exploding powder because of a wanton and foolish act of a fellow servant is not in law foreseeable as a risk of the employment. If the explosion had been caused by the employee while engaged in some duty connected with his employment the result would be different. The court did not err in affirming the award of the Industrial Board denying compensation.

*Judgment affirmed. Sutton, J., concurs.*

STEPHENS, P. J., dissenting. Harley H. Young, an employee of the Georgia Marble Company, received an accidental injury for which he sought compensation. The superior court affirmed the award of the Industrial Board denying compensation. The employee excepted.

The director found the facts as follows: "On November 20, 1941, at about 9 o'clock a. m. claimant was a member of a section gang employed by Georgia Marble Company to keep in repair a private railroad right of way and tracks owned wholly by the Georgia Marble Company, and while they were engaged in their regular work it began raining and the crew went into a small tool shack, where materials and tools were kept for use in the quarry, for the purpose of getting out of the rain. While these men were in this tool shack, Howard Cantrell picked up a can and poured some powder therefrom into his hand, and Olen Fountain asked Cantrell for some of the powder and was given some of the powder by Cantrell, and then Cantrell placed what powder he still had in his hand on the bench on which they had been seated. At about this

time Howard Ray struck a match for the purpose of lighting a cigarette, and after the cigarette had been lighted Ray tossed the match at the pile of powder on the bench but the match went out and fell short of the powder. Charles Crow then got up and walked over in front of Ray and Cantrell and struck a match and threw it on the powder and almost instantly there was an explosion, and claimant along with the four other members of the section gang who were in the shack at the time received painful burns and injuries." The director further found as follows: "From the facts as herein stated it will be seen that each and every member of the section gang, with the exception of this claimant, participated in the sportive act of 'horse play' which resulted in the claimant's injuries, and the question for decision is whether the claimant, having taken no part in the fun-making which caused the accident, but being at a place where he had a right to be, is entitled to compensation because of his accident and injuries."

On the hearing before the full board the following additional statement of facts was agreed to: "That the tool house where the injury occurred to claimant was owned by the employer; that it was from fifteen to twenty feet from where the claimant and others were working on the railroad right of way when it started to rain; that the employer did not provide any special shelter for these employees when it rained, and that it was the custom of these section hands to go to the nearest shelter or building of the employer; that this tool house was the nearest shelter to where they were working that morning when it started raining; that claimant and the other section hands had used this tool house on other occasions to get out of the rain; that on previous occasions they had been directed by their foreman, Mr. Key, to go to this tool house for shelter, and that on this particular day he came by while they were in there and told them that he would be back in a few minutes; that this tool house was unlocked; that no employee stayed there regularly; that this tool house was used for the purpose of keeping tools, powder, and other materials, and that the powder was used in blasting stone in the quarry; that the powder was not under lock and key, but on this particular day it was in a large can sitting on the work bench with the lid off when the claimant and others entered the house; that the claimant was working by the hour and that his time was going on while he was in this tool

house out of rain; it being the custom to pay the railroad employees for all time while they were under or in shelter out of rain, and until they were told by the foreman that they might go home."

In denying compensation the director found as a matter of fact that the claimant's injuries occurred, in the course of his employment, but that it appeared as a matter of law that the claimant's injuries were not compensable, because, applying the decision of this court in *U. S. Fidelity & Guaranty Co.* v. *Green,* 38 *Ga. App.* 50 (supra), to the facts hereof, which were not disputed, it was the finding of the director that the claimant's injuries did not arise out of his employment. It is contended by the claimant that his injuries are compensable because at the time of the accident he was in the performance of an act incidental to his employment, in that he was in the tool house of his employer which had been used by its employees for years as a shelter from the rain, there being no other shelter provided by the employer for that purpose, and that the claimant's injuries came from the hazard to which he was exposed by his employment.

Under the terms of the workmen's compensation act in order for compensation to be due for an injury to an employee such injury must arise both out of and in the course of his employment. *Maryland Casualty Co.* v. *Brown,* 48 *Ga. App.* 822 (173 S. E. 925). An injury is received in the course of the employment when it comes while the employee is doing the duty which he is employed to perform. An injury arises in the course of the employment when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. It is conceded by the employer and insurance carrier, and it was so found by the director, that the injury to the claimant arose in the course of his employment, but the director found as a matter of fact that such injury did not arise out of the employment, and in order to be compensable the injury must arise both out of and in the course of the employment. Neither one alone is sufficient. An injury arises "out of" the employment when it arises because of it, as when the employment is a contributing cause. *Maryland Casualty Co.* v. *Brown,* supra. An injury arises out of the employment when there is apparent to the rational mind, on consideration of all the circumstances, a

causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and not to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then the injury arises out of the employment. The causal danger must be peculiar to the work and not uncommon to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence. See *Georgia Railway & Power Co.* v. *Clore,* 34 *Ga. App.* 409 (129 S. E. 799). It was stated by this court in *Maryland Casualty Co.* v. *Peek,* 36 *Ga. App.* 557, 559 (137 S. E. 121), as follows: "There must be a causal connection between the employment and the injury, and the injury must be the rational consequence of some hazard connected with the employment. The danger which the employee is exposed to may originate either from the employment or outside of it, *if the exposure is peculiar to it."*

It is insisted by the claimant that the accident which caused his injury arose out of the employment, that is, that the injuries resulted from a hazard to which he was exposed by reason of his employment. The claimant was on the master's premises, and while, due to the rain, he was not actually engaged in work, his time was going on, and he was in the tool shed, as was the custom of employees of the marble company to await the cessation of the rain when he could return, with his fellow employees who were likewise in the shed, to their work on the right of way of the employer. This was a reasonable incident to the claimant's employment and he was pursuing it in the usual and ordinary manner. While this shed was not necessarily provided by the master for this purpose it was used by its servants therefor with the knowledge and consent of the master. The claimant and the other employees were to be expected to use this shed as a shelter from the rain whenever a rain storm of sufficient proportions should come up. The employer also employed in its business blasting powder, and such powder was a necessary incident to its business, which

consisted in the operation of a marble quarry and in the operation of a private railroad to the quarry. This blasting powder was kept by the employer in this shed and was in an open keg. It is common knowledge that blasting powder and dynamite are dangerous instrumentalities. Such powder and dynamite were kept by the employer in this shed on its premises and as a part of its business, and were therefore inherent dangers thereof. This powder was the source and the cause of the claimant's injuries. It follows that Young's injury was the result of an accident both out of and in the course of his employment, for the reason that the producing cause was so connected with and related to the business of the employer as to be an inseparable part of it.

It is true that it was the careless act of a fellow employee in throwing a lighted match on a portion of this powder which was exposed which caused the injury. But this fact would not of itself prevent the claimant from being compensated where the nature of the employment was such as to expose him to a wrongful or careless act by another workman, which may be said to have been induced by the peculiar conditions of the employment, the manner in which it was carried on, and the appliances required. Such an act might reasonably be said to arise out of the employment.

It is clear that under all the facts, the happening that caused the injury might reasonably have been foreseen, and, in fact, was anticipated by the employer, and that this accident arose out of the employment. This powder was kept in the tool shed in an exposed condition. The employees were permitted to use this shed to get out of the rain. It does not appear that the employer took any steps to prevent the employees from using this shed to find shelter from the rain, or from smoking in the shed while using it. Where several men are together, with a few idle moments, as under a shelter awaiting the cessation of a shower of rain, such men are likely to smoke, and in order to smoke must strike matches. That is not an unusual happening, but is an act which might reasonably have been foreseen, and in fact must be held to have been anticipated by the employer in this case, and it therefore appears as a matter of law that the accident, resulting from such smoking and striking of matches, which caused the powder to explode, arose out of the employment. Therefore, it appearing that the injury arose both out of and in the course of the employment, the finding

of the director to the contrary was not authorized, and it was error for the superior court on appeal to affirm the award of the board sustaining the finding of the director.

The present case is not like *United States Fidelity & Guaranty Co.* v. *Green,* supra. In that case it appeared as a matter of law that the injury to the employee did not arise both out of and in the course of the employment. It appeared there, as it did here, that the injury arose in the course of the employment. In that case, however, the employee was injured as the result of a pistol being handled by a fellow employee who caused it to fire accidentally, the bullet striking the employee. The court said: "The act of the fellow servant in picking up the pistol and handling it as a mere meddler and from a motive of idle curiosity was not such an act as originated in and was connected with the actual conduct of the business in which the plaintiff was employed." The court further said that the injury to the employee in that case "was occasioned by an intervening agency such as could not have been reasonably contemplated by the employer as a risk naturally incident to the nature of the employment." The fact that the fellow employee kept this pistol on hand for the purpose of protecting the property of the employer which was in his custody is not analogous to the keeping by the employer in this case of blasting powder in an exposed condition in a tool shed in which it permitted its workmen to congregate and find shelter from rain.

In my opinion the judgment which approved the denial of compensation should be reversed. I dissent from the judgment of affirmance.