31936. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *et al. v.* BENFORD.

Decided April 15, 1948.   Rehearing denied May 13, 1948.

*Neely, Marshall & Greene,* for plaintiffs in error.

*W. B. Robinson, Pittman & Hodge,* contra.

FELTON, J.  The evidence demands the finding that the claimant was struck on the left side of his face and that the lick caused him to jerk his head as a result of which his right eye was injured by his striking it against the guide rail of the machine which he was operating.  In the absence of any evidence showing wilfulness or malice on the part of the boy who threw the object, it will be presumed that it was thrown without malice and in a spirit of fun or "horseplay."  There is no evidence that the injured employee participated in the horseplay.  This leads us squarely to the question whether an injury from horseplay of a fellow employee which is caused or contributed to in part by the employment of the one injured where the injured employee does not participate in the horseplay is compensable.  We are aware of no case in this State which has held that an injury under the circumstances of this case is not compensable.  There are those which hold that an employee who participates in the horseplay is not entitled to compensation.  *Georgia Casualty Co.* v. *Martin,* 157 *Ga.* 909 (122 S. E. 881); *Maddox* v. *Travelers Ins. Co.,* 39 *Ga. App.* 690 (148 S. E. 307); *Givens* v. *Travelers Ins. Co.,* 71 *Ga. App.* 50 (30 S. E. 2d, 115).  Under the Workmen's Compensation Law, an employee is entitled to compensation for injuries from accidents arising out of and in the course of the employment; that is, for such occurrences as might have been reasonably contemplated by the employer as a risk naturally incident to the nature of the employment, or such as, after the event, might be seen to have had their origin in a risk connected

with the business of the employment, and to have arisen out of and flowed from that source as a natural consequence. *Keen* v. *New Amsterdam Casualty Co.*, 34 *Ga. App.* 257 (129 S. E. 174). "The injuries suffered . . need not be of the kind anticipated by the employer or peculiar to the employment." Pacific Employers Insurance Co. *v.* Industrial Accident Commission, 26 Cal. 2d, 286 (158 Pac. 2d, 9, 159 A. L. R. 313). Although it seems that the weight of authority denies compensation to participants in horseplay, the courts seem to be evenly divided upon the rights of a nonparticipant. "Better reasoned and more aware of the realities of employment are those decisions holding that a nonparticipant is entitled to compensation if at the time of injury he was attending strictly to his duties." Pacific Employers Insurance Co. *v.* Industrial Accident Commission, supra, and cases cited. In the Matter of Leonbruno *v.* Champlain Silk Mills, 229 N. Y. 470 (128 N. E. 711, 13 A. L. R. 522), the court through Judge Cardozo stated: "The claimant while engaged in the performance of his duties in the employer's factory was struck by an apple which one of his fellow servants, a boy, was throwing in sport at another, and as a consequence lost the better part of the sight of one eye. He did not participate in the horseplay, and had no knowledge of it till injured. . . That it arose 'in the course of employment' is unquestioned. That it arose 'out of' employment, we now hold. The claimant's presence in the factory in association with other workers involved exposure to the risk of injury from the careless acts of those about him. . . Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his services. . . 'For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman, is a matter of common knowledge to every one who employs labor.' The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. . . The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every

day. The test of liability under the statute is not the master's dereliction. . . The test of liability is the relation of the service to the injury, of the employment to the risk." In the case of Hartford Accident & Indemnity Co. *v.* Cardillo, 72 App. (D. C.), 52, 112 Fed. 2d, 11, 14, the court stated: "Nor is it necessary . . that the particular act or event which is the immediate cause of the injury be itself part of any work done for the employer by the claimant or others. . . The statutory abolition of common law defenses made easy recognition of the accidental character of negligent acts by the claimant and fellow servants. . . But these extensions require a shift in the emphasis from the particular act and its tendency to forward the work to its part as a factor in the general working environment. The shift involved recognition that the environment includes associations as well as conditions, and that associations include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional make-up. In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flare-up. Work could not go on if men became automatons repressed in every natural expression. 'Old Man River' is a part of loading steamboats. These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment. . . So long as the claimant is merely the victim, not a participant, it makes little difference whether the fighting is by fellow employees or strangers to the work or what is the immediate occasion for the dispute. The same is true in horseplay. It is sufficient that the work brings the claimant within the range of peril by requiring his presence there when it strikes."

As Horovitz has observed in his Assaults and Horseplay Under Workmen's Compensation Laws, 46 Ill. L. Rev. pp. 311-367, the victims of "horseplay," "larking," or "fooling," under the

workmen's compensation laws have generally been employees falling into one of the three following categories: (1) the innocent employee who was minding his own business and performing his designated duties when injured by the horseplay of a fellow employee; (2) the employee who did not initiate the horseplay but was forced into participation and was injured as a result; and (3) the employee who not only participated but initiated the horseplay which resulted in his own injury. The extent to which the various jurisdictions have gone in permitting or denying compensation in horseplay cases under the workmen's compensation laws has varied from a denial of compensation in all horseplay cases to permitting the payment of compensation to employees in all three of the categories, with some States permitting compensation in the first two categories or only in the first category. In this State the claimants in the cases of *Georgia Casualty Co.* v. *Martin,* 157 *Ga.* 909 (supra), *Givens* v. *Travelers Ins. Co.,* 71 *Ga. App.* 50 (supra), and *Maddox* v. *Travelers Ins. Co.,* 39 *Ga. App.* 690 (supra), were found by the Workmen's Compensation Board to belong to the last or aggressor category and they were denied compensation. We can call to mind no case in this State involving a claimant in the second category. Though the records in *United States Fidelity & Guaranty Co.* v. *Green,* 38 *Ga. App.* 50 (142 S. E. 464), and *Young* v. *Liberty Mutual Ins. Co.,* 68 *Ga. App.* 843 (24 S. E. 2d, 594), disclose that the claimants in those cases were innocent of any participation in the horseplay and were in the course of their employments at the time they were injured, this court reversed the award granting compensation in the *Green* case, and affirmed the award denying compensation in the *Young* case. Those two cases are, in principle, in conflict with the view which we now take; namely, the injury of an innocent employee in the course of his employment by the horseplay of a fellow employee, in which the injured employee did not participate, arises out of the employment and nothing more appearing, is compensable. Insofar as the *Young* case and the *Green* case conflict with this ruling, they are expressly overruled.

Under the terms of the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232), this case was considered and

decided by the court as a whole and the judgment of the superior court reversing the award denying compensation is affirmed.

*Judgment affirmed.* *Sutton, C. J., MacIntyre, P.J., Gardner, Parker, and Townsend, JJ., concur.*