16311

ALLSEP v. DANIEL CONST. CO. *ET AL.*
(57 S. E. (2d) 427)

Messrs. *J. Wiley Brown,* of Greenville, and *Charles &*
*Charles,* of Greenwood, for Appellant,

Messrs. *Haynsworth & Haynsworth,* of Greenville, for
Respondent,

January 30, 1950.

STUKES, Justice.

The Industrial Commission made an award of workmen's compensation to appellant which was reversed by the lower court, whence this appeal. Claimant had been working two weeks as a laborer for Daniel Construction Company, which is a building contractor. It was erecting houses at a cotton mill and claimant and three other employees were moving sheetrock by truck from a warehouse to the job. In the unloading process he and one other stood on the truck, toward the cab, and pushed the pieces of material to the rear of the truck where the two other members of the crew received and took them to be piled nearby. While thus standing on the truck claimant was suddenly and without warning seized by one of his legs by a fellow crew member who was on the ground, and pulled off the truck. As he fell he grabbed the other employee who thereby fell on claimant and the latter's right arm was broken in several places and was found by the Commission to be permanently, functionally impaired.

Claimant and the other employee had worked together only a couple of days and were barely acquainted. The latter was known to claimant only by the name of "Red"; he did not testify. On the day before the accident he invited claimant to have lunch with him, which claimant declined because he had brought his lunch. Only claimant testified concern-

ing the circumstances of the accident and he denied any other communication with Red, any difficulty between them or any horseplay except this incident. The record indicates that the employer offered no evidence.

The Commission found that the injury resulted from accident which arose out of the employment. On this point the Court held that the accident was unconnected with the work and, principally upon the authority of *Gory v. Monarch Mills,* 208 S. C. 86, 37 S. E. (2d) 291, 293, decided that the injury was non-compensable. Upon consideration we conclude to the contrary. *Gory's case* is not controlling. It is distinguishable upon the facts as is seen from the following excerpt from the judgment in that case: "At the time of respondent's injury, he had stopped shoveling (the work he was employed to do) for the purpose of procuring a cigaret for his personal pleasure from Davis who was passing near where he was working. Davis had no connection with the labor at the sand pile, but as aforesaid was merely passing by in connection with work he had been assigned to perform". Here, on the contrary, claimant was immediately engaged in the performance of his duties and had not departed from them in the slightest when the apparently playful push or pull of his fellow employee resulted in the fall and injury.

Rather, the reasoning employed in *Eargle v. South Carolina Electric & Gas Co.,* 205 S. C. 423, 32 S. E. (2d) 240, 242, is dispositive of this case. There the following was quoted with approval from a Massachusetts opinion (*In re Employers' Liability Assur. Corp.,* 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306) : "Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard

to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence".

Moreover, if the *Gory case* be considered one of horseplay, it appears that he was the aggressor or initiator which is often an important distinction as will be seen upon investigation of the many decisions of other courts which have had to deal with the problem. The annotations hereinafter cited contain the bulk of them.

It is common knowledge from universal experience that when men are gathered together at work they are given to pranks which sometimes result in injuries, as here; and it is one of the anticipated risks of employment. When injury and loss of wages result the workman or his dependent should be compensated in conformity with the well-known purpose of the compensation act to transfer in part the financial burden of disability to the employer. In return he is relieved of liability for damages in tort actions. An early leading case to the point is *Leonbruno v. Champlain Silk Mills,* 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522, in which Justice Cardozo wrote the since widely quoted opinion. He said in part, as follows: "The claimant while engaged in the performance of his duties in the employer's factory was struck by an apple which one of his fellow servants, a boy, was throwing in sport at another, and as a consequence lost the better part of the sight of one eye. He did not participate in the horseplay, and had no knowledge of it till injured. * * * That it arose 'in the course of employment' is unquestioned. That it arose 'out of' employment, we now hold. The claimant's presence in the factory in association with other workmen involved exposure to the

risk of injury from the careless acts of those about him. * * * Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service. * * * For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman, is a matter of common knowledge to every one who employs labor. The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. * * * The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute is not the master's dereliction. * * * The test of liability is the relation of the service to the injury, of the employment to the risk."

It is illogical to say, as respondents argue, that the occasion of claimant's injury was unrelated to his work. On the contrary, the injury was incidental to the employment. This is demonstrated by the simple consideration that if the claimant had been in the shelter of his home or walking unaccompanied along the street he would not have been subject to hazard which resulted in his disability. Certainly the instant injury was more incidental to the employment than was the bite of a black widow spider, held compensable in *Schrader v. Monarch Mills,* 215 S. C. 357, 55 S. E. (2d) 285.

The homely word "horseplay" is applied by the courts to pranks and practical jokes which are frequently indulged in by congregated workmen; and courts generally distinguish between aggressors or instigators, who are not compensated when injured, and nonparticipating victims or innocent bystanders who are compensated. It is not required in this case to consider the soundness of the distinction, now forsaken

by some courts, because it is only inferable from the record here that claimant was not engaged in any form of play when injured and there is no evidence of willful or malicious assault, so the distinctions adhered to in assault cases are likewise irrelevant. *Cyrus v. Miller Tire Service,* 208 S. C. 545, 38 S. E. (2d) 761, and cases cited. Had claimant fallen from the truck as the result of pure accident, there would be no controversy as to compensability. How then can there be reasonable contention when he fell as the result of an uninvited and unprovoked antic of his fellow worker?

A basic purpose of the compensation law is to eliminate fault as a requisite to liability. Here it is not contended that there was any fault on the part of the employer but that does not relieve from liability for compensation. Nor can the employer find refuge in the fault of claimant's fellow servant. *Cf.* Code, § 7035-17. Contributory negligence of a claimant also plays no part, or even his sole negligence. These concepts are difficut to one grounded in the principles of the common law, yet they control in the realm of workmen's compensation. Our act contains a provision which in substance denies compensation when the injury results from intoxication or willful misconduct of the injured employee but that does not encompass this case. Code, § 7035-15.

A comparatively early (1930) North Carolina case is in point, *Chambers v. Union Oil Co.,* 199 N. C. 28, 153 S. E. 594, 596, in which it was said: "Indeed, if a workman be denied compensation solely upon the ground that he was injured by the 'sportive act' of a fellow workman, it would seem to be clear that the old 'fellow servant' doctrine is appearing in a brand new suit of legal clothes and parading through the law under the brand new name of 'horseplay'. It is generally conceded by all court that the various Compensation Acts were intended to eliminate the fault of the workman as a basis for denying recovery. In other words, a workman is entitled to recover irrespective of fault if the injury arises out of and in the course of the employment.

The doctrine of horseplay, which excludes a workman from compensation, although he is not at fault, and does not engage therein, is inconsistent with the underlying philosophy of Compensation Acts, which are designed for the very purpose of eliminating fault as a basis for determining liability."

In a recent (1948) well-considered decision the Court of Appeals of Georgia joined the apparent majority, expressly overruled two of their former decisions and adopted the rule which was concisely stated as follows: "The injury of an innocent employee in the course of his employment by the horseplay of a fellow employee in which the injured employee did not participate, arises out of the employment and nothing more appearing, is compensable." *American Mutual Liability Ins. Co. v. Benford,* 77 Ga. App. 93, 47 S. E. (2d) 673, 676.

Horseplay cases from many jurisdictions are collected in the following annotations: 13 A. L. R. 540; 20 A. L. R. 882; 36 A. L. R. 1469; 43 A. L. R. 492; 46 A. L. R. 1150; 159 A. L. R. 319; and in the article entitled Assaults and Horseplay under Workmen's Compensation Laws by Samuel B. Horovitz in the October 1946 issue of Illinois Law Review. Later treatment of the subject is found in 6 Schneider's Workmen's Compensation (3d Ed. 1948) 558 *et seq.* The following is quoted from page 560; "Since a majority of the jurisdictions now award compensation to innocent or non-participating employees, and to employees whose participation is but momentary and not 'aggressive', a rule, under the broader conception of the law, may be said to be that injuries sustained by an employee while in the course of his employment as a result of another's horseplay, are compensable as arising out of and in the course of his employment. The question of whether the aggressor should be entitled to compensation for injuries resulting from his own aggressiveness is one which must be left for future determination. The general trend, however, appears to be in that direction."

Perhaps of all the cases read that which is closest in facts to this is *Borden Mills v. McGaha,* 161 Tenn. 376, 32 S. W. (2d) 1039. There the claimant-employee was sitting on a wheeled box awaiting frames on which she worked to be brought. Another employee, in a spirit of fun, came up behind her, pushed the box and rolled it rapidly. In making a turn she was thrown from the box and injured. Award of compensation was upheld, mainly upon the authority of *Leonbruno v. Champlain Silk Mills, supra,* 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522, although many other supporting decisions were cited. The conclusion of compensability was expressly confined to a nonparticipating victim of the horseplay of another and that is as far as we need go in this case in order to sustain the award.

Judgment reversed and the award of compensation reinstated.

BAKER, C.J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.