33805.   BIBB MANUFACTURING COMPANY *v.* COWAN.

DECIDED MARCH 8, 1952—REHEARING DENIED APRIL 2, 1952.

*Ed Benton, Jones, Jones & Sparks,* for plaintiff in error.

*Wyatt, Morgan & Sumner,* contra.

WORRILL, J. (After stating the foregoing facts.) ■ There was no competent evidence to support the award of the full board and it was contrary to law. Consequently the superior court erred in affirming the judgment. "To authorize compensation under the workmen's compensation act, it must appear that the employee's injury (1) arose out of, and (2) in the course of, his employment; and (3) that the accident was within the purview

of the act. All three of these elements must concur and all must be proved, before a recovery is authorized. Bryant *v.* Fissell, 84 N. J. L. 72 (86 Atl. 458). We find no cases in this State in which the right to recover under the workmen's compensation act has arisen out of an accident, which was the result of 'horseplay' or 'skylarking', but the right has been denied in the following cases, which were called to our attention, to wit: *United States Fidelity & Guaranty Co.* v. *Green*, 38 *Ga. App.* 50 (142 S. E. 464); *Maddox* v. *Travelers Insurance Co.*, 39 *Ga. App.* 690 (148 S. E. 307); *Georgia Casualty Co.* v. *Martin*, 157 *Ga.* 909 (122 S. E. 881); *Young* v. *Liberty Mutual Insurance Co.*, 68 *Ga. App.* 843 (24 S. E. 2d, 594). We seem to have followed the rule stated in 2 Schneider on Workmen's Compensation Law (2d ed.) 1829, § 523, which is as follows: 'The rule is well enough settled that where workmen step aside from their employment and engage in horse-play or practical joking, or so engage while continuing their work, and accidental injury results, and in general where one in sport or mischief does some act resulting in injury to a fellow worker, the injury is not one arising out of the employment within the meaning of compensation acts.' It has been said that 'the employer was not charged with the duty to see to it that none of his employees assaulted any other one of them, either wilfully or sportively.' Hully *v.* Moosbrugger, 88 N. J. L. 161 (95 Atl. 1007, L. R. A. 1916C, 1203)." *Givens* v. *Travelers Insurance Co.*, 71 *Ga. App.* 50, 51 (30 S. E. 2d, 115).

The testimony of the claimant himself does not show that his injury arose out of his employment and thus raise any conflict in the evidence. His relevant testimony, stated in narrative form, was as follows: "Morris is the one who shoved me down. He worked in the mill, Morris Hamlin, and he stepped back and let the lady get her check. When I first walked up to him, Mr. Stone told me to tell him to get back and let the lady get her check, and I just caught him by the arm and shook him a little bit and told him to get back and let Clara get her check, Clara Durand. She was a lady working in the mill, too, in the same room. Morris stepped up and got his, and that left me next, and I was fixing to get my stub and all of a sudden why he give me a shove and shoved me out. I was off balance at the time. I wasn't expecting nothing. It wasn't very heavy. I wasn't

looking at him. I had not made any statement to him or he to me since I first walked up. . . As to whether Mr. Stone said something to me first—told me 'Paul, tell Morris to get back and let that lady get her check.' When he said Morris he was talking about Mr. Hamlin. When he said the lady he was talking about Mrs. Durand. They were both in the same line. Mrs. Durand was behind Hamlin. She stepped up. Stone is a spool layer, just simply another employee in the mill. He was not my superior in any way, not in charge of me, not my boss. He did not have any authority to tell me to ask anybody to get out of the line. . . I stepped up and caught hold of his arm and shook it. I says 'Get back, Morris, and let the lady get her check,' and he did and then she got hers and he got his and I started to get mine. I did not get it. . . As to how much time elapsed from the time I went up and shook him by the arm and suggested or told him to step back until the accident happened or the occurence—I would say a minute or two. Didn't take no time to hand them out. . . In that time Mrs. Durand had gotten her check and Mr. Hamlin had gotten his check. . . As to whether Mr. Stone was just kidding with me and trying to have a little fun when he suggested that I go up and get this Morris Hamlin to get out of the line—I suppose he was. . . As to whether the only reason I went up there at all was just to be having a little fun; just because he told me, I reckon. I was entering into the thing with him. It was not any part of my job to do anything like we did there. I was there for the purpose of getting my check. While I was waiting to get my check Stone made this suggestion, and in a spirit of fun I entered into it with him and went up and said something to Hamlin and tugged at his sleeve. He suggested that when I walked up. That is the reason I went up to Hamlin, just in having fun with him. I did not push him. I just shook him. I fell when he pushed me back, after he got his check and stepped out. . . I did not push him out of the line. As to whether he stepped out of the line a little bit—well, he moved. As to whether I came back the second time and tugged at him again, then he pushed me and I fell down, and it was all part of the same thing, happened within a minute of the time—all right close together. Mr. Hamlin and I had not had any argument or any

fight or any words. We were not scrapping. I was not mad at him. He was not mad at me. . . The first thing that occurred, other than the people standing there getting their checks and attending to their business, was when I went up to Mr. Hamlin and did whatever I did. There was not a minute of that. . . I was trying to be courteous to the lady when I asked Mr. Hamlin to step back. . . There was not any long line. As to whether as far as being courteous to the lady and there being no point in trying to help her get her check with one, just one, person ahead of where she was standing—just because Stone told me to say it. I reckon I just went over there because Stone suggested it. . . As to whether, after I tugged Mr. Hamlin's sleeve or coat and told him to step back, he stepped back and Mrs. Durand got her check then—yes, sir, he stepped back. Then he got his check. Both those things happened before I was shoved.".

It is earnestly contended by the defendant in error that he was injured while engaged in an act of courtesy to a lady and should not be denied compensation. While the Workmen's Compensation Act is to be liberally construed in order to accomplish its beneficent purposes, it has never been held that an employee may be compensated because of mere injury during the *period* of employment. It is required beyond dispute that to justify such an award the employee's injury must have arisen *out of* his employment. In the present case it is not contended that the claimant, at the time of his injury, was acting under the direction of any superior, but merely accepting the suggestion of a fellow employee that he induce another employee to defer to a lady ahead of him in line in the matter of obtaining a pay check. He readily admits that such an act was no part of his employment. Nevertheless, counsel for the claimant cite and strongly rely, as do two of the members of this court in dissenting from the opinion of the majority, upon *Glens Falls Indemnity Co.* v. *Sockwell,* 58 *Ga. App.* 111 (197 S. E. 647), and *American Mut. Liability Ins. Co.* v. *Benford,* 77 *Ga. App.* 93 (47 S. E. 2d, 673). In the *Sockwell* case the claimant had courteosuly stopped his laundry truck when flagged down by some boys and girls whose automobile had ceased to function. He had, however, completed his service to the fellow travelers and, "while standing

with one foot on the pavement, one foot on the running-board of the truck, one hand on the door, and one hand on the steering-wheel, and apparently in the act of getting back in the truck, he was struck by an automobile driven by a drunken person at a high rate of speed." This court said: "Foregoing any discussion as to emergency, etiquette of the road, or establishing good will for the employer, as dealt with in the opinions rendered by the single director and the board, the test of the right of the claimants to compensation in the present case is narrowed to the determination of whether or not, at the monent the deceased was struck by the automobile of another, *the injury arose out of and in the course of his employment.*" (Italics ours.) The court further said: "That he was in the act of entering or preparing to enter the truck, under the evidence, requires no strained construction. He was on his regular route, and under the workmen's compensation act he was protected from the perils of the highway. The injury sustained was in the course of his employment, and arose out of that employment."

In the *Benford* case the claimant was not engaged in "horseplay," but was injured while at work for his employer by one who was himself engaged in such sportive conduct and which was in no wise produced by the claimant. Manifestly, these two cases do not hold that one injured as a result of his "horseplay" or sportive conduct, or even courtesy, when such injury does not arise out of his employment, is entitled to compensation. Courtesy is, of course, an admirable quality. But even the rendition of courtesy has its limitations. When one person has rightfully established himself in line to receive a pay check, as here, it is for him to say whether or not he will yield his place to another. He may not justly be dislodged from his position by an interloper, whether in malice or in play, who seeks to justify his interference by the empty excuse that he was attempting to render an act of courtesy to a lady, and would have his resulting injury regarded as one arising out of his employment.

In the opinion of the majority of this court, the injury of the claimant did not arise out of his employment, but was the natural result of what might be charitably denominated as "horseplay" or sportive conduct on his part. See *Georgia Casualty Co.* v. *Martin*, 157 *Ga.* 909 (122 S. E. 881).

This case was considered by the court as a whole as provided by the act of 1945 (Ga. L. 1945, p. 232).

*Judgment reversed. Sutton, C. J., Gardner, P. J., and Carlisle, J., concur. Felton an Townsend, JJ., dissent.*

FELTON and TOWNSEND, JJ., dissenting. This is a workmen's compensation case, in which the claimant seeks to recover on account of a broken hip sustained when a fellow workman pushed him and caused him to fall while they were in a line formed to receive their pay. The single director found the accident not compensable because the injury resulted from horseplay initiated by the claimant. The full board, reviewing the findings of the single director, found that the accident was compensable, as the injuries arose out of and in the course of the employment of the claimant.

There is certainly evidence to support the finding of the single director. However, since the award was reviewed by the full board, the latter having been upheld by the superior court, which judgment is the subject of the exception here, it is necessary for this court to determine whether or not there is any evidence to support the finding of the full board that the injuries of the claimant arose out of and in the course of the employment. It is contended that the claimant's injuries resulted from wilful misconduct, and also that they resulted from horseplay. The distinction between these defenses is this: wilful misconduct will bar recovery, even though the accident arises in the course of the employment, and even though it arises out of it, but wilful misconduct contemplates "the idea of premeditation, obstinacy and intentional wrongdoing." *Armour & Co. v. Little,* 83 *Ga. App.* 762, 766 (64 S. E. 2d, 707); Code, §§ 114-102, 114-105. Horseplay contemplates a stepping aside from the employment in a spirit of fun and prankishness, and is therefore not something arising out of the employment; nevertheless, it will not bar recovery if it was not initiated or participated in by the claimant. *American Mutual Liability Ins. Co. v. Benford,* 77 *Ga. App.* 93 (47 S. E. 2d, 673). The full board found as a matter of fact that these contentions were invalid. There was evidence to support this finding. All the witnesses agreed that the injury was not intentional, nor the result of malice, ill-will, or mutual combat of any kind. The claimant's testimony was to the effect

that, when he shook Morris Hamlin and told him to let the lady go ahead of him in the line, which he did at Stone's suggestion and in a spirit of courtesy, Hamlin stepped back; that Mrs. Durand received her check, Hamlin received his, and the claimant was in the act of receiving his when Hamlin came over and pushed him. The board was authorized to find from this testimony that, whatever Hamlin's conduct may have been, that of the claimant was not horseplay but was an expression of courtesy toward a female fellow-employee. An act of courtesy toward a fellow employee, even though negligent, and even though not in itself an expressly assigned duty, will not bar recovery for injuries resulting therefrom on the ground that it constitutes an abandonment of the employer's business. *Columbia Casualty Co. v. Parham*, 69 *Ga. App.* 258 (25 S. E. 2d, 147); *American Mutual Liability Ins. Co. v. Benford*, 77 *Ga. App.* 93, supra; *Glens Falls Indemnity Co. v. Sockwell*, 58 *Ga. App.* 111, supra.

It is axiomatic that, where the award of the full board is supported by any evidence, it will not be disturbed by this court. The evidence here demands a finding that the injury did not result from wilful misconduct on the part of either party; and that most favorable to the claimant authorizes a finding that he was not and had not been motivated by the instincts of a prankster, but was merely carrying out the directions of a fellow employee in a spirit of helpfulness and courtesy when he caused Hamlin to step back. This being so, the board was authorized to find that any horseplay on Hamlin's part in shoving him was not horseplay initiated or participated in by him, and would not bar his recovery.

We therefore believe that the judge of the superior court correctly affirmed the award of the full board, and dissent from the judgment of reversal.